[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 23, 2009
THOMAS K. KAHN
CLERK

No. 08-10052
_____

D. C. Docket No. 06-00584-CV-TWT-1

MALIK DOUGLAS,
JIMMY FAUST, et al.,

Plaintiffs-Appellants,

versus

DEKALB COUNTY, GEORGIA,
LOUIS GRAHAM, Individually and in his
Official Capacity as Police Chief, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District  District of Georgia

_____

(January 23, 2009)

Before EDMONDSON, Chief Judge, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

This case involves claims of adverse employment actions suffered by three DeKalb County police officers. The gravamen centers around the DeKalb County Police Department's (DeKalb Police) decision to discipline officer Shane Smith and terminate officers Malik Douglas and Jimmy Faust, allegedly for protected union activity. The three officers filed suit alleging they were retaliated against because of their union involvement with the International Brothers of Police Officers (IBPO). Defendants DeKalb County and Louis Graham, Ray Flemister, Thomas Lane, Janice Love, Michael Reynolds, Kyle Jones, and Vernon Jones, DeKalb officers sued in their individual and official capacities, countered that Plaintiffs were disciplined for insubordination and violation of county policies. The issue on appeal is whether the district court erred in granting final summary judgment in favor of Defendants. We conclude, after reviewing the record, summary judgment was appropriate.

## I. BACKGROUND

Douglas and Faust allege they were suspended and subsequently terminated in violation of their First Amendment rights to freedom of association. Smith, similarly, alleges he was suspended and demoted because of his protected union activities. Additionally, Smith alleges he suffered race discrimination by DeKalb County and officers Graham and Flemister.

Douglas, along with other DeKalb Police officers including Faust and Smith, formed the DeKalb County chapter of the IBPO. Douglas, as president of the IBPO, began an initiative to try to put financial pressure on DeKalb County by decreasing revenue through a ticket writing slow down campaign. Plaintiffs dispute it was a ticket writing slow down and suggest it was merely a "ticket initiative" to remind officers of the police department's policies and the priority placed on responding to calls as opposed to writing traffic tickets.

Douglas surreptitiously taped a conversation between Douglas and Graham, the DeKalb County Chief of Police, at a meeting about the IBPO's ticket campaign. Similarly, Faust also surreptitiously taped a conversation with Graham. Faust requested a meeting with Graham to seek a suspension reduction after being suspended for one week for his harassment of a fellow officer for her failure to participate in the IBPO's ticket campaign. At the meeting Graham noticed a bulge in Faust's shirt pocket. When asked if he had a tape recorder, Faust acknowledged he was recording Graham without his consent.

Although Smith did not surreptitiously tape a fellow officer, he lied to Internal Affairs investigators about possessing his tape recorder. While investigating a domestic dispute incident at Douglas's home, Internal Affairs interviewed Smith, who had responded to the incident. Prior to the interview,

3

Smith was told to leave his tape recorder and gun in his car. When Smith returned he was asked whether he had a tape recorder on him. After he indicated the tape recorder was in his car, the Internal Affairs interviewer asked him to retrieve his tape recorder to listen to the interview of Douglas's mother. Smith then admitted he had the tape recorder on him. As a result of the Internal Affairs investigation, a conduct unbecoming violation was sustained against Douglas for his conduct toward his mother. Smith was also found to have engaged in conduct unbecoming of an officer because he initially omitted pertinent information from his police report of the incident at Douglas's home and then lied about whether he still had his tape recorder with him during his Internal Affairs interview about the incident.

In granting Defendants' motion for summary judgment, the district court found Defendants had presented compelling evidence showing the three officers were disciplined for violating DeKalb County policies, rather than for union membership. According to the district court, the record was replete with instances in which each of the three officers violated DeKalb County policy, which would have warranted discipline, even in the absence of union activity. The court noted the evidence of participating in a ticket slow down and secret taping were reason enough for termination.

## II. STANDARD OF REVIEW

We review grants of summary judgment *de novo*, applying the same legal standard the district court used. *Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In the light most favorable to the nonmoving party, we review the evidence and ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2512 (1986). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). "A grant of summary judgment may be upheld on any basis supported by the record." *Burton v. Tampa Hous. Auth.*, 271 F.3d 1274, 1277 (11th Cir. 2001).

## III. DISCUSSION

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to

assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. Implicit in the right to engage in these First Amendment activities is a "corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 104 S. Ct. 3244, 3252 (1984). To establish a claim under 42 U.S.C. § 1983 for violating their First Amendment rights, plaintiffs must show (1) a violation of a constitutional right, and (2) the alleged violation was committed by a person acting under color of state law. *See, e.g.*, *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

Appellants challenge the district court's grant of final summary judgment in favor of Appellees. Based upon our review of the record, we are persuaded the evidence does not support Appellants' assertions that the adverse employment

actions were motivated by protected union activity.[1]  Thus there was no

constitutional violation.

Although they call it a ticket initiative rather than a ticket slow down,

Appellants admit they were involved in the IBPO's ticket campaign.  Appellants

do not dispute a ticket writing slow down campaign is a violation of Georgia law

and DeKalb County policy,[2] for which officers could be disciplined.  Douglas and

Faust do not dispute they surreptitiously tape recorded a superior officer.  Smith

admitted he was untruthful with Internal Affairs when asked whether or not he had

a tape recorder on him during the Internal Affairs interview.

There is no genuine issue as to any of these material facts.  Discipline of

these officers was warranted due to their activities and action apart from their

union involvement.  As there were adequate grounds to discipline these officers

---

[1]Since we are persuaded the adverse employment actions were not motivated by protected union activity, we need not perform a *Pickering* balancing.  *Pickering v. Bd. of Educ.*, 88 S. Ct. 1731 (1968).  Following *Pickering*, this Court has articulated a four-part analysis for retaliation by a government employer against an employee for alleged constitutionally protected speech. The employee must show: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; (3) the speech played a substantial part in the adverse employment action; and (4) if an employee satisfies her burden on the first three steps, the burden then shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech.  *Boyce v. Andrew*, 510 F.3d 1333, 1343 (11th Cir. 2007) (citing *Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005)).

[2] *See* O.C.G.A. 45-19-2 ("No public employee shall promote, encourage, or participate in any strike . . .") and O.C.G.A. 45-19-1(3) (including in the definition of "strike" the "stoppage or deliberate slowing down of work").

7

and insufficient evidence to support a constitutional violation, the district court did not err in granting summary judgment on Appellants' freedom of association claim.

Not only was summary judgment appropriate on Appellants' First Amendment claim, but summary judgment was also appropriate on Smith's race discrimination claim. Smith, a Caucasian officer, alleges DeKalb County, and Officers Graham and Flemister, African-American officers, discriminated against him by suspending and demoting him. A thorough review of the record finds evidence of racial discrimination against Smith wanting.

Smith failed to establish the elements of a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); *Cooper v. Southern Co.*, 390 F.3d 695 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 126 S.Ct. 1195 (2006). The three Appellants were involved in the IBPO's ticket campaign. Smith, a Caucasian officer, was demoted, whereas Douglas and Faust, African-American officers, were terminated. Smith was disciplined less harshly than Douglas and Faust. Not only was Smith involved in the ticket campaign, he also admitted to lying to an

Internal Affairs investigator.[3]  There is no evidence Smith received disparate treatment because of his race.

We note that notwithstanding Smith's failure to make out a prima facie case, Defendants have articulated a non-discriminatory basis for their employment action. *Texas Dept. of Cmty. Affairs v. Burdine*, 101 S. Ct. 1089, 1093 (1981).  As discussed above, participating in the ticket campaign and untruthfulness with Internal Affairs investigators is a sufficient, non-discriminatory basis for suspending and demoting Smith.  Moreover, Smith has failed to show the violation of county policies was a pretextual basis for demoting him.  *See St. Mary's Honor Ctr. v. Hicks*, 113 S. Ct. 2742, 2749 (1993).

## IV. CONCLUSION

After thoroughly reviewing the record and considering the positions presented at oral argument, we conclude all other issues raised by Appellants are without merit.[4]  We affirm the district court order in all respects.

**AFFIRMED.**

---

[3] Smith has failed to identify a similarly situated officer of any ethnic or racial background who was disciplined less harshly than he.

[4] Indeed, as this Court has found no constitutional violation, we need not consider the qualified immunity issue.